Filed: March 26, 2014

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-2418**
(11-0154 BLA)

_____

MINGO LOGAN COAL COMPANY,

          Petitioner,

      v.

ERMA JEAN OWENS, widow of DALLAS R. OWENS; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT
OF LABOR,

          Respondents.

_____

O R D E R

_____

The Court amends its opinion filed July 31, 2013, as follows:

On page 21, fifth line of text, the sentence beginning "In sum" is corrected to read, "In sum, we conclude that although the Board announced a standard to rebut the § 921(c)(4) presumption, purportedly restricting Mingo Logan to the two rebuttal methods available to the Secretary, the announced standard was not in fact applied by either the ALJ or the Board."

For the Court – By Direction

/s/ Patricia S. Connor
          Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2418

MINGO LOGAN COAL COMPANY,

                    Petitioner,

          v.

ERMA JEAN OWENS, widow of DALLAS R. OWENS; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT
OF LABOR,

                    Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(11-0154 BLA)

Argued:  March 21, 2013          Decided:  July 31, 2013

Before NIEMEYER, DAVIS, and DIAZ, Circuit Judges.

Petition for review denied by published opinion.  Judge Niemeyer
wrote the opinion, in which Judge Davis and Judge Diaz joined.
Judge Niemeyer wrote a separate concurring opinion.

**ARGUED:**    William  Steele  Mattingly,  JACKSON  KELLY,  PLLC,
Morgantown, West Virginia, for Petitioner.  John Crawford Cline,
Piney View, West Virginia; Sarah Marie Hurley, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondents.  **ON
BRIEF:**  Ashley M. Harman, Jeffrey R. Soukup, JACKSON KELLY,
PLLC, Morgantown, West Virginia, for Petitioner.  M. Patricia
Smith, Solicitor of Labor, Rae Ellen James, Associate Solicitor,
Sean  G.  Bajkowski,  Counsel  for  Appellate  Litigation,  UNITED

STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

NIEMEYER, Circuit Judge:

After nearly 30 years of coal mine employment, Dallas Owens became totally disabled because of breathing difficulties, and in April 2008, he filed a claim for black lung benefits. An Administrative Law Judge ("ALJ") found that Owens' claim triggered the rebuttable presumption for benefits under 30 U.S.C. § 921(c)(4), available to miners who are totally disabled and have worked 15 years or more in underground coal mines, and that Mingo Logan Coal Company, Owens' former employer, failed to rebut the presumption. The ALJ therefore awarded benefits to Owens, and the Benefits Review Board affirmed.

On appeal, Mingo Logan contends that the ALJ and the Board applied the wrong legal standard in evaluating whether it had met its rebuttal burden, erroneously limiting it to the two methods that the text of the statute specifies are the only means by which the Secretary may rebut the presumption. See 30 U.S.C. § 921(c)(4) (providing, "The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine"). Mingo Logan contends that limiting it to these two methods of rebuttal violated not only the clear language of § 921(c)(4), which makes the rebuttal limitations applicable to the Secretary, but also the Supreme

3

Court's holding in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 35 (1976) (construing the statute to place no limitations on the means by which an employer may satisfy its burden on rebuttal).

Both Owens and the Director of the Office of Workers' Compensation Programs argue that even though the statute does not, by its terms, limit employers to the two specified methods of rebuttal, logic does, and therefore the ALJ and the Board articulated the correct legal standard.

We do not reach Mingo Logan's challenge to the standard announced by the Board to rebut the § 921(c)(4) presumption of entitlement to benefits, because we conclude that the ALJ did not in fact apply rebuttal limitations to Mingo Logan, and the Board affirmed the ALJ's analysis. Because we also find that Mingo Logan's other challenges to the ALJ's factual findings lack merit, we affirm the Board's award of benefits. Accordingly, we deny Mingo Logan's petition for review.

I

Owens worked in West Virginia coal mines for close to 30 years, beginning in 1974, and he spent the last 10 of those years working in coal mines as an electrician for Mingo Logan Coal Company. He stopped working in 2003 when he developed difficulty breathing, a problem that got worse with time. In

4

April 2008, Owens filed a claim under the Black Lung Benefits Act, which awards benefits to coal miners who are totally disabled due to pneumoconiosis. See 30 U.S.C. § 901 et seq. The statute's implementing regulations define the term pneumoconiosis to include not only those diseases medically recognized as pneumoconiosis ("clinical pneumoconiosis"), but also "any chronic lung disease or impairment and its sequelae arising out of coal mine employment" ("legal pneumoconiosis"). 20 C.F.R. § 718.201(a). A claims examiner found that Owens was eligible for benefits and ordered Mingo Logan to pay him $1,048.10 a month. Mingo Logan contested the award and requested a formal hearing with an ALJ. The hearing was conducted on December 9, 2009.

At the hearing, Owens testified about his employment history and his breathing problems, for which he had been prescribed oxygen. He also testified that he had smoked about a quarter of a pack of cigarettes a day when he was in his late teens and early twenties but that he had not smoked since 1965. In addition to Owens' testimony, the parties introduced various forms of medical evidence concerning his condition, including (1) conflicting interpretations of two chest X-rays and three CT scans; (2) the results from pulmonary function tests and arterial blood gas studies; (3) notes of observations from two of his treating physicians, Dr. Maria Boustani and Dr. Oscar

5

Figueroa, indicating that Owens had pneumoconiosis; and (4) conflicting medical opinions from three physicians, Dr. D.L. Rasmussen (offered by the Director), Dr. George Zaldivar (offered by Mingo Logan), and Dr. Kirk Hippensteel (offered by Mingo Logan), all three of whom agreed that Owens was totally disabled by a pulmonary impairment but disagreed as to its diagnosis and cause. Dr. Rasmussen diagnosed Owens as having both clinical pneumoconiosis and interstitial fibrosis and opined that both conditions were attributable to Owens' exposure to coal mine dust. Dr. Zaldivar diagnosed Owens with idiopathic interstitial fibrosis or, in his words, "an interstitial fibrosis of undetermined cause," but unrelated to coal mining. Dr. Hippensteel essentially reached the same conclusion, opining that Owens' "type of lung disease is a disease of the general public unrelated to his prior coal mine dust exposure" and that he "would be just as impaired by the same pulmonary problem had he never worked in a coal mine."[*]

---

[*] After the hearing but before the ALJ issued her decision, Congress enacted the Patient Protection and Affordable Care Act ("PPACA"), which contained a section amending the Black Lung Benefits Act. See Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). As relevant here, for pending claims filed after January 1, 2005, the PPACA reinstated a presumption that had lapsed in 1982, specifying that a miner with at least 15 years of underground coal mine employment who "demonstrates the existence of a totally disabling respiratory or pulmonary impairment" is entitled to a rebuttable presumption that he is "totally disabled due to pneumoconiosis." 30 U.S.C.

6

In October 2010, the ALJ awarded Owens benefits. She concluded that because Owens had more than 15 years of underground coal mine employment and because the evidence established that he was totally disabled by a respiratory impairment, the rebuttable presumption of § 921(c)(4) arose that he was totally disabled due to pneumoconiosis. The ALJ also found that Mingo Logan did not rebut that presumption. In this respect, the ALJ considered seven interpretations of two chest X-rays, giving more weight to the readings that interpreted the films as positive for pneumoconiosis based on the physicians' relative qualifications. The ALJ also gave greater weight to Dr. Rasmussen's opinion as to the cause of Owens' disability than to the opinions offered by Dr. Zaldivar and Dr. Hippensteel, emphasizing that Dr. Rasmussen's opinion was better

---

§ 921(c)(4). In response to the amendment, the ALJ reopened the record to allow both parties an opportunity to submit new evidence, and Mingo Logan submitted supplemental reports from both Dr. Zaldivar and Dr. Hippensteel.

The preexisting regulation that implemented former § 921(c)(4), 20 C.F.R. § 718.305, remains inapplicable by its terms. See 20 C.F.R. § 718.305(e) (providing that the regulation "is not applicable to any claim filed on or after January 1, 1982"). The Department of Labor, however, asserts that the substance of that regulation "remains the Department's definitive interpretation of Section 921(c)(4)," and it has proposed a new version of the regulation, which has not yet gone into effect. See Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 77 Fed. Reg. 19,456 (proposed Mar. 30, 2012).

supported by the objective medical evidence and "the opinions of two pulmonary experts who treated [Owens]," while Dr. Zaldivar and Dr. Hippensteel "chose to totally eliminate consideration of [Owens'] 29 years of coal dust exposure as a potential environmental factor in the development of his interstitial fibrosis." The ALJ therefore concluded that "the preponderance of the best documented and reasoned evidence of record establishes the presence of clinical and legal pneumoconiosis." She also found that Dr. Zaldivar and Dr. Hippensteel's diagnosis of idiopathic interstitial fibrosis was "not sufficient to establish a cause of [Owens'] disability other than [coal workers' pneumoconiosis]." She concluded, at bottom, that Mingo Logan failed to rebut the § 921(c)(4) presumption.

The Benefits Review Board affirmed by a decision and order dated October 28, 2011. The Board concluded that the ALJ's findings were supported by substantial evidence and that the ALJ properly explained her finding that the positive X-ray readings outweighed the negative X-ray readings and "properly found that Dr. Rasmussen's opinion was better documented and reasoned than the opinions of Drs. Zaldivar and Hippensteel."

Mingo Logan filed this petition for review, challenging both the legal standard applied to its rebuttal evidence, as well as the sufficiency of the analysis and the evidence.

8

Owens died on July 8, 2012, but his widow continues to pursue his claim on behalf of his estate.

II

Mingo Logan contends that the ALJ and the Benefits Review Board applied the wrong legal standard in assessing whether it rebutted the presumption established by 30 U.S.C. § 921(c)(4). Under § 921(c)(4), if the miner shows that he worked 15 years or more in underground coal mines and that he suffers from a totally disabling respiratory or pulmonary impairment, a rebuttable presumption arises that the miner "is totally disabled due to pneumoconiosis." In the absence of credible rebuttal evidence, the miner would then be entitled to benefits.

In its opinion affirming the ALJ's award of benefits, the Board stated that Mingo Logan could rebut the § 921(c)(4) presumption only by showing either (1) that Owens did not have pneumoconiosis or (2) that his respiratory or pulmonary impairment did not arise out of, or in connection with, his coal mine employment. In support of this statement, the Board cited the statutory language: "The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4).

9

Mingo Logan argues that the Board improperly applied to it the rebuttal limitations of § 921(c)(4) even though the plain text shows that those limitations apply only when the "Secretary" seeks to rebut the presumption. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 35 (1976) ("[I]t [is] clear as a matter of statutory construction that the [provision's] limitation on rebuttal evidence . . . applies only to 'the Secretary' and not to an operator seeking to avoid liability . . ."). By applying the rebuttal limitations to it, Mingo Logan argues, the Board denied it the chance to rebut the presumption with evidence that pneumoconiosis did not substantially contribute to Owens' total disability.

Owens and the Director of the Office of Workers' Compensation Program contend that the standard announced by the Board was appropriate even if the statutory language does not directly apply to the employer, because the methods of rebuttal articulated in § 921(c)(4) are the only logical methods by which the presumption can be rebutted. In short, they argue that the statute's "rebuttal limitations" are actually not limitations at all.

While the dispute over the correct rebuttal standard could affect whether a miner receives benefits, in this case we conclude that Mingo Logan was not in fact restricted in the evidence it offered in rebuttal, and the ALJ did not apply the

10

rebuttal limitations in considering the evidence. Rather, the ALJ analyzed whether Mingo Logan presented credible evidence to rebut any aspect of the miner's claim covered by the presumption.

The Black Lung Benefits Act awards benefits to miners who are totally disabled due to pneumoconiosis. 30 U.S.C. §§ 901(a), 921; 20 C.F.R. §§ 718.204(a), 725.1(a), 725.201(a)(1). This language defining when benefits are available is the same as the language defining the scope of the presumption created by § 921(c)(4). To establish an entitlement to benefits, a claimant must show (1) that he has pneumoconiosis, in either its "clinical" or "legal" form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability. 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1). "Pneumoconiosis is a 'substantially contributing cause' of the miner's disability if it (i) [h]as a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) [m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." Id. § 718.204(c)(1).

11

Relating these claim elements to § 921(c)(4)'s presumption, when a miner proves 15 years of coal mine employment and element (3), i.e., the total disability element, a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis. Thus, with this provision, the miner presumptively satisfies claim elements (1) (the existence of pneumoconiosis), (2) (pneumoconiosis arose out of coal mine employment), and (4) (pneumoconiosis caused the total disability). Although Mingo Logan argues that the ALJ limited its ability to rebut the presumption by applying to it the rebuttal methods applicable only to the Secretary, the record in fact shows that the ALJ did no such thing. Rather, the ALJ considered all of the evidence that Mingo Logan presented and found that it did not rebut any of the three elements covered by the presumption.

Specifically, as to element (1) (the presence of pneumoconiosis), the ALJ considered Mingo Logan's evidence, together with the evidence presented by Owens, and concluded, "I find that the preponderance of the best documented and reasoned evidence of record establishes the presence of clinical and legal pneumoconiosis." As to element (2) (that pneumoconiosis arose out of coal mine employment), the ALJ pointed to another rebuttable presumption, as stated in 20 C.F.R. § 718.203(b), which establishes this element if the miner had at least 10

12

years of coal mine employment. She then concluded that because Mingo Logan "ha[d] not presented evidence to rebut the presumption," Owens "ha[d] established the presence of pneumoconiosis arising out of coal mine employment." And finally as to element (4) (that pneumoconiosis caused the total disability), the ALJ understood that the presumption could be rebutted by the employer. The ALJ considered the causation evidence submitted by both sides and concluded that Mingo Logan "has failed to establish that [Owens'] respiratory disability is due to a condition other than pneumoconiosis." The ALJ thus effectively rejected the evidence offered by Mingo Logan to rebut element (4) by showing that pneumoconiosis was not a <u>substantially contributing</u> cause of Owens' total disability.

In affirming the ALJ, the Benefits Review Board recited the ALJ's holding, explicitly referring to the ALJ's conclusion that Mingo Logan did not rebut element (4):

> The administrative law judge also found that employer failed to establish that claimant does not have clinical or legal pneumoconiosis, <u>or that claimant's total disability was not due to pneumoconiosis.</u> Consequently, the administrative law judge found that employer failed to rebut the presumption of total disability due to pneumoconiosis at Section 411(c)(4) of the Act, 30 U.S.C. § 921(c)(4).

(Emphasis added). While the Board then summarized its affirmance by referring to the sentence in § 921(c)(4) that addresses how the Secretary may rebut the presumption, it

13

nonetheless proceeded to address substantively the ALJ's factual findings and evaluation of the evidence and affirmed them.

In short, while the Benefits Review Board purported to subject the employer to the rebuttal methods applicable to the Secretary in § 921(c)(4), it concluded in substance that no aspect of the presumption was rebutted, affirming the ALJ's finding that Mingo Logan failed to show that Owens had only mild pneumoconiosis that did not substantially contribute to his total disability. Accordingly, because the record shows that § 921(c)(4)'s two methods of rebuttal did not affect the Board's disposition of this case, we need not address Mingo Logan's claim that restricting employers to those methods improperly raised its burden on rebuttal.

### III

On the merits, Mingo Logan contends that, in concluding that it had not rebutted the § 921(c)(4) presumption, the ALJ failed to consider the medical evidence in its entirety and failed to provide an adequate rationale in support of her conclusions, resulting in a decision that falls below the minimum threshold required by the Administrative Procedure Act ("APA"). Specifically, it argues (1) that the ALJ did not adequately explain her weighing of the chest X-ray evidence; (2) that she improperly discounted the medical opinions of Dr.

14

Zaldivar and Dr. Hippensteel; and (3) that Dr. Rasmussen's opinion, combined with Owens' treatment records, was insufficient to support the ALJ's finding of legal pneumoconiosis.

Our review of these matters assesses whether "substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." Harman Mining Co. v. Dir., Office of Workers' Comp. Programs, 678 F.3d 305, 310 (4th Cir. 2012) (alteration in original) (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). As part of "determining whether substantial evidence supports the ALJ's factual determinations, we must . . . address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). But we must also be mindful that the ALJ, as the trier of fact, "is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence." Doss v. Dir., Office of Workers' Comp. Programs, 53 F.3d 654, 658 (4th Cir. 1995).

15

With respect to Mingo Logan's contention that the ALJ failed "to provide adequate explanation under the APA for her weighing of the chest X-ray evidence," the APA does require ALJs to "include a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). An adequate explanation, however, "can be a succinct one," Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs, 137 F.3d 799, 803 (4th Cir. 1998), and the APA's "duty of explanation" is satisfied as long as "a reviewing court can discern what the ALJ did and why she did it," Harman, 678 F.3d at 316 (alterations and internal quotation marks omitted).

In this case, the ALJ had before her three interpretations of a chest X-ray taken on May 15, 2008, and four interpretations of an October 15, 2008 X-ray. The ALJ first explained the relative radiological qualifications of the persons who made an interpretation, noting that a physician becomes a "B reader" when he passes an examination testing his "proficiency in assessing and classifying X-ray evidence of pneumoconiosis," while a Board-certified radiologist has received certification in radiology or diagnostic roentgenology by the American Board of Radiology or the American Osteopathic Association. See 20 C.F.R. § 718.202(a)(ii)(C), (E). The ALJ then explained that a dually qualified physician (i.e., a radiologist who was both a B

16

reader and Board-certified) and a doctor who was a B reader had interpreted the first X-ray as positive for the presence of pneumoconiosis, while one dually qualified physician read the film as negative. Giving more weight to the reading that had been corroborated, the ALJ found "that this [May 2008] film supports finding the presence of pneumoconiosis."

The ALJ similarly evaluated the conflicting interpretations of the October 2008 X-ray, noting that it had been read as positive by two dually qualified physicians and negative by one dually qualified physician and by one physician, Dr. Zaldivar, who had subsequently lost his B reader certification. She then explained that she was giving "more weight to the jointly held opinions of the dually qualified physicians who interpreted the film as positive." She thus concluded that "the preponderance of the X-ray evidence supports a finding of the presence of pneumoconiosis."

On this record, the Board found that the ALJ adequately explained her assessment of the X-ray evidence. And we agree. The applicable regulation specifies that "where two or more X-ray reports are in conflict," the ALJ must consider "the radiological qualifications of the physicians interpreting such X-rays." 20 C.F.R. § 718.202(a)(1). Because the ALJ did just that here, we conclude that she sufficiently explained why she found the X-ray evidence on the whole indicated that Owens had

17

pneumoconiosis and that substantial evidence supported that finding.

Next, with respect to Mingo Logan's contention that the ALJ incorrectly disregarded the opinions of its experts, the ALJ gave a number of reasons in support of her decision to "accord less weight to the opinions of Drs. Zaldivar and Hippensteel." She found that they both "dismissed in a cursory [fashion] the medical literature that associated coal dust exposure with interstitial fibrosis;" that they both "maintained that idiopathic interstitial fibrosis exists in the general population, but neither adequately addressed the fact that [Owens] is not a member of the general population" based on his extensive coal-dust exposure; and that they "[b]oth acknowledged that the diagnosis of idiopathic interstitial fibrosis depended on ruling out all suspected factor[s], but neither doctor gave an adequate explanation for why coal dust inhalation could not have caused at least some of [Owens'] impairment." The ALJ also found their opinions "compromised by not being fully documented," noting (1) that "[n]either doctor fully addressed the fact that two treating pulmonary specialist[s] found sufficient evidence to diagnose [coal workers' pneumoconiosis] rather than idiopathic interstitial fibrosis;" (2) that "[b]oth doctors relied upon negative readings of X-rays and CT scans, regardless of contrary interpretations by dually qualified

18

physicians, or by the doctor who read the films during treatment;" (3) that neither addressed one of the treating pulmonologists' "findings of a mixed obstructive and restrictive defect;" and (4) that neither "gave adequate consideration to whether the evidence established legal pneumoconiosis."

At bottom, the ALJ found that Dr. Zaldivar and Dr. Hippensteel did not adequately explain why, in their view, Owens' interstitial fibrosis was not "significantly related to, or substantially aggravated by," his exposure to dust through his coal mine employment. 20 C.F.R. § 718.201(b). In other words, the ALJ found that these doctors' reports and testimony did not adequately explain why Owens' interstitial fibrosis -- which they identified as the cause of his total disability -- did not constitute legal pneumoconiosis.

Nonetheless, Mingo Logan challenges this finding by pointing to places in the record where it contends Dr. Zaldivar and Dr. Hippensteel did indeed explain "how and why they eliminated Mr. Owens' coal dust exposure as the cause of his interstitial fibrosis." But the ALJ never said that these doctors failed to provide any explanation for their views on this critical point. Instead, she found that the explanations they gave were inadequate and ultimately unconvincing.

Having fully reviewed the record, we conclude that the ALJ acted within her factfinding role in deciding to give less

19

weight to the opinions of Dr. Zaldivar and Dr. Hippensteel. See Westmoreland Coal Co. v. Cochran, __ F.3d __, No. 11-1893, slip op. at 13 (4th Cir. June 4, 2013) (noting that "[i]t is the role of the ALJ -- not the appellate court -- to resolve" the "battle of the experts").

Finally, Mingo Logan contends that Dr. Rasmussen's opinion, combined with the notes of Owens' treating pulmonary specialists, did not amount to substantial evidence to support the ALJ's finding that Owens had both clinical and legal pneumoconiosis or her finding that Mingo Logan failed to show that Owens' pulmonary disability was not due to these diseases. Mingo Logan argues that Dr. Rasmussen offered only an equivocal, differential diagnosis. This assertion, however, takes certain statements by Dr. Rasmussen out of context and overlooks his clearly expressed opinion that Owens' condition was "primarily the result of [his] long term exposure to coal mine dust and that he suffers from coal mine induced, totally disabling chronic lung disease."

Similarly, Mingo Logan argues that the ALJ relied too heavily on Owens' treatment records. In our view, however, the ALJ followed the standards established in 20 C.F.R. § 718.104(d) and gave appropriate consideration to the opinions of Dr. Boustani and Dr. Figueroa, noting that "the record is not developed sufficiently to allow me to accord their opinions

20

controlling weight" and instead deciding to give their opinions "significant weight."

We thus reject Mingo Logan's challenge to the sufficiency of the evidence.

*   *   *

In sum, we conclude that although the Board announced a standard to rebut the § 921(c)(4) presumption, purportedly restricting Mingo Logan to the two rebuttal methods available to the Secretary, the announced standard was not in fact applied by either the ALJ or the Board. Instead, the ALJ considered all of the evidence that Mingo Logan offered to demonstrate that pneumoconiosis did not cause or substantially contribute to Owens' total disability, and the Board affirmed the substance of the ALJ's analysis. We also reject Mingo Logan's challenges to the ALJ's analysis and the sufficiency of the evidence.

Accordingly, Mingo Logan's petition for review is denied.

It is so ordered.

21

NIEMEYER, Circuit Judge, concurring:

I write this separate concurring opinion on my conviction that Mingo Logan's challenge to the standard for rebutting the § 921(c)(4) presumption should have been addressed. And in addressing it, I would hold that the rebuttal standard announced by the Board was erroneous, as demonstrated both by the explicit language of § 921(c)(4) and the Supreme Court's holding in Usery.

The Board stated that it was applying to Mingo Logan the limiting rebuttal standard applicable to the Secretary, failing to recognize that in Usery, the Supreme Court held that the standard applicable to the Secretary did not apply to employers. Only because it applied the limiting standard clumsily in this case -- and thus considered all methods of rebutting the § 921(c)(4) presumption that Mingo Logan offered -- have we been able to resolve this appeal without addressing the standard. But this quirk, which was uncovered only by a close reading of the Board's opinion, leaves sufficient doubt about the issue that we should resolve it.

I now write to demonstrate why the standard announced by the Board was erroneous.

As we point out, under § 921(c)(4), if the miner shows that he worked 15 years or more in underground coal mines and that he suffers from a totally disabling respiratory or pulmonary

22

impairment, a rebuttable presumption arises that the miner "is totally disabled due to pneumoconiosis." In the absence of credible rebuttable evidence, the miner would then be entitled to benefits.

The Board indicated that Mingo Logan could rebut the § 921(c)(4) presumption only by showing either (1) that Owens did not have pneumoconiosis or (2) that his impairment did not arise out of, or in connection with, his coal mine employment. In doing so, the Board referenced the statutory language: "The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4).

As noted above, the parties disagree on whether the Board announced the correct rebuttal standard for employers. Mingo Logan argues that the Board improperly applied to it the rebuttal limitations of § 921(c)(4) because the plain text shows that those limitations apply only when the "Secretary" seeks to rebut the presumption. See Usery, 428 U.S. at 35. By applying the rebuttal limitations to it, Mingo Logan argues, the Board denied it the chance to rebut the presumption with evidence that pneumoconiosis <u>did not cause the miner's total disability</u>. Relying on how 20 C.F.R. § 718.204(c)(1) defines this causation

23

standard, it reasons that the Board's standard effectively denied it the opportunity to show that Owens' disability was caused by idiopathic interstitial fibrosis and that his pneumoconiosis was so mild as not to "substantially contribute" to his disability. Id.

Owens and the Director of the Office of Workers' Compensation Program contend that the standard announced by the Board was appropriate even if the statutory language does not directly apply to the employer, because the methods of rebuttal articulated in § 921(c)(4) are the only logical methods by which the presumption can be rebutted. In short, they argue that the statute's "rebuttal limitations" are actually not limitations at all.

Resolution of the parties' differences requires comparing the four claim elements necessary to establish a claim for benefits and the rebuttal methods contained in § 921(c)(4).

As we have already pointed out, to establish entitlement to benefits, a claimant must show that (1) he has pneumoconiosis; (2) his pneumoconiosis arose out of coal mine employment; (3) he has a total disability; and (4) his pneumoconiosis caused the total disability. Thus, claim elements (1) and (3) are existential elements, requiring the existence of pneumoconiosis and the existence of total disability, while claim elements (2) and (4) articulate causal relationships.

24

Relating the claim elements to § 921(c)(4), when the miner proves 15 years of coal mine employment and claim element (3), i.e., the total disability element, a rebuttable presumption arises that the miner is totally disabled due to pneumoconiosis. Thus, with this provision, the miner presumptively satisfies claim elements (1) (the existence of pneumoconiosis), (2) (pneumoconiosis arose out of coal mine employment), and (4) (pneumoconiosis caused the total disability). Because the presumption is rebuttable, the coal mine operator would logically be entitled to defeat it by introducing evidence rebutting any of those three claim elements.

Because the statute specifies that the Secretary may rebut the presumption only by showing that the miner does not have pneumoconiosis (rebutting claim element (1)) or that there is no connection between the miner's disability and his coal mine employment, it imposes a higher standard for rebuttal than would otherwise be logically permissible to rebut claim element (4). Claim element (4) could logically be rebutted by showing that the miner's pneumoconiosis was not a substantially contributing cause of his total disability, even if it contributed some minimal amount to his impairment. See 20 C.F.R. § 718.204(c)(1). In this way, the statute limits the Secretary's ability to rebut claim element (4). But the statute is silent about the scope of an employer's rebuttal, and the

25

employer's methods of rebuttal are thus not limited. Consequently, because the presumption covers claim elements (1), (2), and (4), the employer may carry its burden by introducing evidence rebutting any of these elements, <u>without limitation</u>.

Owens and the Director failed to appreciate the statutory language and the logic of § 921(c)(4), claiming that the Secretary's rebuttal methods are also the employer's only logical rebuttal methods, especially when the various elements of a claim are examined through their definitions. But the straightforward language of § 921(c)(4) belies their position, as noted. Moreover, the Supreme Court has confirmed the existence of a <u>limitation</u> on the Secretary that does not apply to the employer, necessarily recognizing that rebuttal methods (A) and (B) identified in § 921(c)(4) are not logically equivalent to the methods that would otherwise be available.

In <u>Usery</u>, the Court actually stated that the rebuttal methods of § 921(c)(4) were <u>limiting</u>. <u>Usery</u>, 428 U.S. at 34. And precisely because they were limiting, the coal mine operators involved in <u>Usery</u> made the same argument that Mingo Logan makes here:

> The Operators contend that this limitation erects an impermissible irrebuttable presumption, because it establishes liability even though it might be medically demonstrable in an individual case that the miner's pneumoconiosis was mild and did not cause the disability -- that the disability was wholly a product of other disease, such as tuberculosis or emphysema.

26

Disability due to these diseases, as the Operators note, is not otherwise compensable under the Act.

Id. at 34-35. Accepting the legitimacy of the operators' argument, the Court held:

[W]e think it clear as a matter of statutory construction that the [§ 921(c)(4)] limitation on rebuttal evidence is inapplicable to operators. By the language of [§ 921(c)(4)], the limitation applies only to "the Secretary" and not to an operator seeking to avoid liability [for benefits].

Id. at 35.

Accordingly, I would conclude that the Board announced and purported to apply to Mingo Logan rebuttal limitations that applied only to the Secretary and that, in this respect, it erred as a matter of law.