**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-2416**

_____

WEST VIRGINIA CWP FUND, as carrier for Daniel Boone Coal
Company of WV, Inc.,

        Petitioner,

    v.

ARDIS J. GUMP; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

_____

On Petition for Review of an Order of the Benefits Review Board.
(11-0134-BLA)

_____

Argued: March 19, 2014          Decided: April 15, 2014

_____

Before GREGORY and FLOYD, Circuit Judges, and DAVIS, Senior
Circuit Judge.

_____

Petition denied by unpublished per curiam opinion.

_____

**ARGUED:** William Steele Mattingly, JACKSON KELLY PLLC,
Morgantown, West Virginia, for Petitioner. Heath M. Long,
PAWLOWSKI BILONICK & LONG, Ebensburg, Pennsylvania; Sean Gregory
Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.,
for Respondents. **ON BRIEF:** Ashley M. Harman, Kevin T. Gillen,
JACKSON KELLY PLLC, Morgantown, West Virginia, for Petitioner.
M. Patricia Smith, Solicitor of Labor, Rae Ellen James,
Associate Solicitor, Ann Marie Scarpino, Office of the
Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.,

for Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

As amended, the Black Lung Benefits Act ("the Act") provides to claimants a rebuttable presumption favoring the award of benefits if they can establish fifteen years of coal mining employment and the existence of a totally disabling respiratory or pulmonary impairment. 30 U.S.C. § 921(c)(4). This presumption is referred to as the "15-year rebuttable presumption." Here, the West Virginia Coal Workers' Pneumoconiosis Fund ("the Fund") challenges the Department of Labor Benefits Review Board's award of black lung benefits to Ardis J. Gump, who worked as a miner in West Virginia for over thirty years. Gump's claim relied on the 15-year rebuttable presumption as applied by the Administrative Law Judge ("ALJ"). For the reasons set forth within, we deny the petition for review.

I.

After thirty-four years as a coal miner, at least fifteen of which were spent working underground, Ardis Gump began suffering from obstructive lung disease sometime around 1998. Gump's breathing and respiratory impairments have since worsened. At the time of the evidentiary hearing, Gump was unable to shower or climb steps without losing his breath.

On February 27, 2008, Gump filed a sixth claim for lifetime benefits with the Department of Labor against the Fund, the

3

carrier for Daniel Boone Coal Company, one of his former employers. He had previously filed five subsequent claims, each of which was denied. ALJ Thomas M. Burke presided over a formal hearing on Gump's sixth claim on September 22, 2009. The ALJ heard testimony from Gump's wife (Gump's dementia prevented him from testifying) and he admitted and considered corroborative medical evidence and reports from five physicians.

Gump's previous claims had been denied because he had been unable to establish the existence of a total disability or a qualifying disease. Although the physicians agreed that Gump was now totally disabled by a pulmonary impairment, they disagreed as to the disability's diagnosis and cause. Aside from his exposure to coal dust, Gump was a heavy smoker, smoking about half-a-pack per day. Three physicians, Dr. Martin, Dr. Schaaf, and Dr. Saludes, diagnosed Gump with coal workers' pneumoconiosis, attributable to his employment,[1] while the other

---

[1] Although Drs. Martin, Schaaf, and Saludes diagnosed Gump with both clinical and legal pneumoconiosis, the ALJ found that Gump prevailed as to legal pneumoconiosis only. For purposes of the Act, clinical pneumoconiosis consists of "those diseases recognized by the medical community as pneumoconiosis," whereas legal pneumoconiosis expands the scope to encompass "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including, as is relevant in this case, an obstructive pulmonary disease arising out of coal mine employment. 20 C.F.R. § 718.201(a) (2008).

4

two, Dr. Renn and Dr. Bellotte, opined that Gump did not have pneumoconiosis and that his disability was caused by smoking.

Before the adjudication of Gump's claim, Congress enacted amendments to the Act, see Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010), which eased the path for miners to establish a claim for benefits. Relevant here, the amendment reinstated a rebuttable presumption of total disability due to pneumoconiosis, or the "15-year rebuttable presumption." Under the presumption, if a claimant establishes the existence of a totally disabling respiratory or pulmonary impairment and fifteen years of underground coal mining employment, he is entitled to a rebuttable presumption that pneumoconiosis caused his disability. Id. at § 1556(a), codified at 30 U.S.C. § 921(c)(4).

On September 30, 2010, the ALJ issued a Decision and Order awarding black lung benefits to Gump. Applying § 921(c)(4), the ALJ held that Gump was entitled to the 15-year rebuttable presumption because he had worked in coal-mining for thirty-four years and because all five physicians agreed that he was, from a pulmonary standpoint, totally disabled. He then addressed whether the Fund had established either that Gump does not suffer from pneumoconiosis or that Gump's disability did not arise out of coal mine employment. The ALJ concluded that, due to inadequate presentations by its physician experts, the Fund

5

had not met its burden on either score. Upon appeal, the Board issued a per curiam opinion accepting the ALJ's reasoning and affirming the ALJ's decision.

The Board agreed with the ALJ's conclusion that the Fund failed to disprove the existence of legal pneumoconiosis. It pointed out that the two physicians who had disputed the diagnosis had not sufficiently accounted for Gump's positive response to bronchodilator medications, a reaction typically consistent with coal-related disease and not tobacco. In addition, one of the experts demonstrated an incomplete grasp of relevant legal definitions, in that he attributed his diagnosis of no legal pneumoconiosis to other physicians' diagnosis of no clinical pneumoconiosis.

The Board also accepted the ALJ's finding that the Fund had failed to disprove that Gump's disability arose out of his employment in a coal mine. The same two physicians who had disputed the diagnosis also questioned disability causation; because their analyses of the latter rested on their conclusion on the former, the Board agreed with the ALJ's decision to discredit their testimony.

## II.

The Fund challenges the Board's decision on three grounds. First, it contends that the ALJ's application of the 15-year rebuttable presumption violated the Supreme Court's decision in

6

<u>Usery v. Turner Elkhorn Mining Co.</u>, 428 U.S. 1 (1976), by limiting its rebuttal options to the text of § 921(c)(4). Second, it asserts that the ALJ erroneously discredited its physicians' conclusions as to disability causation. Finally, it asks for a review of the sufficiency of the evidence presented to rebut the presumption of Gump's legal pneumoconiosis.

In reviewing administrative decisions regarding benefit claims under the Act, we determine whether "substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the [Board] and ALJ are rational and consistent with applicable law." <u>Harman Mining Co. v. Dir., Office of Workers' Comp. Programs</u>, 678 F.3d 305, 310 (4th Cir. 2012) (internal citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consol. Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197, 229 (1938).

A.

The Fund first argues that the ALJ misapplied the 15-year rebuttable presumption established by 30 U.S.C. § 921(c)(4) because he improperly restricted its efforts to rebut it. We disagree.

In order to establish an entitlement to benefits under the Act, a claimant must demonstrate by a preponderance of the evidence that he is totally disabled due to pneumoconiosis

arising out of coal mine employment. 30 U.S.C. § 901(a); Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1195 (4th Cir. 1995). In other words, the Act requires that a claimant demonstrate

> (1) that he has pneumoconiosis, in either its "clinical" or "legal" form ["disease"]; (2) that the pneumoconiosis arose out of coal mine employment ["disease causation"]; (3) that he is totally disabled by a pulmonary or respiratory impairment ["disability"]; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability ["disability causation"].

Mingo Logan Coal Co. v. Owens, 724 F.3d 550, 555 (4th Cir. 2013) (citing 20 C.F.R. § 725.202(d)(2)); see also Buck Creek Coal Co. v. Sexton, 706 F.3d 756, 758 (6th Cir. 2013).

If a claimant qualifies for the 15-year rebuttable presumption under 30 U.S.C. § 921(c)(4), however, the burden shifts. The 15-year rebuttable presumption tracks the requirements of § 901(a): if a claimant establishes the existence of a qualifying disability (element 3) and 15 years of coal mining employment, then he is entitled to a rebuttable presumption that he suffers from pneumoconiosis and that the pneumoconiosis caused his disability (elements 1, 2, and 4). Mingo, 724 F.3d at 555. It thus follows that a party may defeat the presumption by rebutting any one of those three elements: existence of pneumoconiosis (1), disease causation (2), or disability causation (4).

8

Here, the ALJ analyzed all three issues in turn. As to element (1), the existence of pneumoconiosis, the ALJ comprehensively examined the evidence presented by the Fund and found that it had successfully refuted the presence of clinical pneumoconiosis but did not refute the presence of legal pneumoconiosis. The ALJ also considered disease causation, element (2), as part of his analysis regarding legal pneumoconiosis, concluding that "Employer has failed to rebut the presumption that Claimant's lung disease is caused in part by his exposure to coal dust." J.A. 45. Finally, the ALJ looked to the Fund's evidence on disability causation, element (4). Rejecting the Fund's experts as unpersuasive on whether Gump's disability was caused by pneumoconiosis, the ALJ concluded that the Fund failed to rebut the presumption.

Likewise, the Board also duly examined all three avenues of rebuttal. The Board considered whether the evidence disproved the existence of legal pneumoconiosis, element (1), and held that the ALJ properly discounted the physicians' testimony because they failed to disassociate Gump's disease from his exposure to coal dust, element (2). It also considered, and ultimately agreed with, the ALJ's conclusion of sufficient evidence of disability causation (4). We conclude that the ALJ's findings of fact and conclusions of law, as well as the Board's

9

subsequent affirmance of his findings, appropriately scrutinized each aspect of rebuttal evidence offered by the Fund.

The Fund's argument to the contrary relies primarily on the Supreme Court's decision in Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976), in which the Court held that the language of 30 U.S.C. § 921(c)(4) delineating methods of rebuttal applies only to the Secretary of the Department of Labor and "is inapplicable to operators." Id. at 35. According to the Fund, the ALJ improperly limited its rebuttal options to those listed in § 921(c)(4) even though it is a private mine operator.

We are not persuaded that the ALJ limited his analysis in such a manner. Under § 921(c)(4), "[t]he Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4). Even though the ALJ's analysis was structured along this two-pronged format, his analysis nevertheless examined all three elements covered by the presumption in a substantive manner.[2] E.g., Mingo, 724 F.3d at 555 ("Although Mingo Logan

_____

[2] It is unexceptional that the ALJ chose to collapse his analysis of presence of disease (element 1) and disease causation (element 2). Since at least 1978, the definition of legal pneumoconiosis has been defined as "any chronic lung disease or impairment . . . arising out of coal mine
(Continued)

10

argues that the ALJ limited its ability to rebut the presumption by applying to it the rebuttal methods applicable only to the Secretary, the record in fact shows that the ALJ did no such thing. Rather, the ALJ considered all of the evidence that Mingo Logan presented and found that it did not rebut any of the three elements covered by the presumption."). Here, as in Mingo, the ALJ considered all possibilities for rebuttal; accordingly, as a matter of law, he did not err under Usery.

The Fund argues, alternatively, that the ALJ utilized an improper standard of proof with respect to the three rebuttal options. It posits that as a private mine operator, not bound by the language of § 921(c)(4), it could rebut the 15-year presumption upon a lesser showing than could the Secretary. Cf. Mingo, 724 F.3d at 560 (Niemeyer, J., concurring); but see Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir. 1984) ("[T]he employer must rule out the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption.")

_____

employment." 20 C.F.R. § 718.201(a)(2) (emphasis added). Thus, if an ALJ finds that legal pneumoconiosis has been established (1), it logically follows that the miner's qualifying disease was caused by coal mining (2). As we have explained, the fact that the ALJ employed a two-element analytical structure does not obscure the fact that he duly considered three elements. See, e.g., Big Branch Resources, Inc. v. Ogle, 737 F.3d 1063, 1070 (6th Cir. 2013).

(emphasis added). We need not resolve this issue, however, because the record demonstrates that the Fund's presentation would have failed under <u>any</u> standard. As discussed in greater detail below, the ALJ rejected, on sound grounds, the testimony of the two expert physicians proffered by the Fund. Save for the testimony of those experts, the Fund submitted minimal evidence (if any at all) to corroborate its assertions as to existence of disease, disease causation, and disability causation. Thus, we find that the Fund was not restricted, either by form or by standard, in the evidence it presented to rebut the 15-year presumption.[3]

B.

The Fund also challenges the ALJ's conclusion that it did not meet its burden of rebutting Gump's disability causation, or whether Gump's disability arose out of his coal mine employment. In rejecting the argument as to disability causation, the ALJ had referred — in the Fund's view, erroneously — to his conclusion as to the existence of disease. The ALJ observed that the sole evidence presented by the Fund to rebut disability causation was comprised of the expert opinions of Dr. Renn and

---

[3] Nor will we reach the validity of 20 C.F.R. § 718.305 (2013), the DOL's regulation implementing § 921(c)(4). Our holding today rests on the ALJ's application of the statutory 15-year rebuttable presumption and its interplay with <u>Usery</u>. On the facts of this case, we find no reversible error.

Dr. Bellotte, but that neither doctor had found the existence of legal pneumoconiosis in the first instance; importantly, the physicians' conclusion that Gump's disability was unrelated to pneumoconiosis was based on their premise that Gump did not suffer from pneumoconiosis in the first place. The ALJ thus concluded that the experts' conclusions as to disability causation lacked credibility and failed to satisfy the Fund's burden on rebuttal. See also Board Decision, J.A. 56 ("The same reasons for which the administrative law judge discredited the opinions of Drs. Renn and Bellotte, that claimant does not suffer from legal pneumoconiosis, also undercut their opinions that claimant's impairment is unrelated to his coal mine employment.").

We do not find error in the ALJ's analysis. The ALJ noted that these physicians in particular relied on a finding of no legal pneumoconiosis to conclude that Gump's disability was not caused by his exposure to coal dust. If the premise upon which a conclusion was based is determined to lack credibility (and thus probative value), then it follows that the conclusion itself lacks credibility, as well. We are also unpersuaded by the Fund's attempted distinction between a finding of pneumoconiosis and a presumption of pneumoconiosis. This ostensible distinction does not change the fact that the ALJ had legitimate reason to

13

discredit the physicians' opinions on an issue that served as the basis for a second and derivative opinion.

## C.

Finally, after reviewing the record, we hold that the ALJ relied on substantial evidence in concluding that the Fund did not meet its burden to rebut the presumption that Gump suffered from legal pneumoconiosis. The ALJ reviewed the opinions of four physicians who had opined on whether Gump had legal pneumoconiosis, two of whom answered in the affirmative and two in the negative. The ALJ found, however, that the opinions of the two physicians who found no disease were "not persuasive" and "not well-reasoned," in part because they failed to disassociate Gump's disease from his exposure to coal dust and, as to Dr. Bellotte in particular, because he had reversed his original opinion and displayed a flawed understanding of the definition of legal pneumoconiosis. We agree with the Board that the ALJ's credibility determinations are rational and supported by substantial evidence in the record. Doss v. Dir., Office of Workers' Comp. Programs, 53 F.3d 654, 658 (4th Cir. 1995).

## III.

For the reasons set forth above, we deny the petition for review.

PETITION DENIED

14