**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2034

WEST VIRGINIA CWP FUND, as insurer for Logan Coals, Inc.,

Petitioner,

v.

PAGE BENDER, JR.; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(11-0683-BLA; 10-BLA-5257)

Argued: January 29, 2015                    Decided: April 2, 2015

Before KEENAN, FLOYD, and HARRIS, Circuit Judges.

Petition for review denied by published opinion. Judge Keenan
wrote the opinion, in which Judge Floyd and Judge Harris joined.

**ARGUED:** William Steele Mattingly, JACKSON KELLY PLLC,
Morgantown, West Virginia, for Petitioner. Sean Gregory
Bajkowski, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C.;
Roger Daniel Forman, LAW OFFICE OF ROGER D. FORMAN, Buckeye,
West Virginia, for Respondents. **ON BRIEF:** M. Patricia Smith,
Solicitor of Labor, Rae Ellen James, Associate Solicitor, Maia
S. Fisher, Deputy Associate Solicitor, Gary K. Stearman, Counsel
for Appellate Litigation, Office of the Solicitor, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director,
Office of Workers' Compensation Programs, United States
Department of Labor.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the validity of an administrative regulation and its evidentiary standard under which coal mine operators may rebut a presumption of disability that otherwise qualifies certain coal miners for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 through 945. Logan Coals, Inc.[1] (the operator) seeks review of a decision of the Benefits Review Board affirming an administrative law judge's (ALJ) award of benefits to Page Bender, Jr. under the Act. Because Bender had worked as an underground coal miner for 21 years and suffered from a totally disabling respiratory condition, the ALJ applied to Bender's claim a rebuttable presumption of total disability due to pneumoconiosis, as provided by 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 718.305.[2] After considering the medical evidence, the ALJ concluded that the operator had not rebutted the presumption of total disability due to pneumoconiosis by "ruling out" any causal

---

[1] The named petitioner in this appeal is the West Virginia Coal Workers' Pneumoconiosis Fund, insurer for Logan Coals, Inc.

[2] As discussed further below, at the time the ALJ and the Board rendered their decisions, the current version of Section 718.305 was not yet in effect. The parties agree that the current version of the regulation applies to this case and is substantively identical to the standard used by the ALJ. See 20 C.F.R. § 718.305(a) (explaining that the presumption applies to "all claims filed after January 1, 2005, and pending on or after March 23, 2010").

2

relationship between Bender's pneumoconiosis and his disability. The ALJ therefore awarded black lung benefits to Bender, and the Benefits Review Board affirmed the ALJ's decision.

In its petition for review, the operator argues that the ALJ erred in applying the "rule-out" rebuttal standard. We disagree and hold that the Department of Labor acted within its regulatory authority in requiring coal mine operators to show, in the case of miners who meet the statutory criteria for the presumption, that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d). We also hold that the ALJ's decision is supported by substantial evidence. Accordingly, we affirm the award of benefits and deny the operator's petition for review.

I.

We begin by stating the statutory and regulatory framework, including certain pertinent history. The Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901 through 945, was first enacted in 1969.[3] See Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 683-84 (1991) (describing history of the Act). The Act is intended "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis [(black lung disease)]

_____

[3] The Act was originally titled the Federal Coal Mine Health and Safety Act of 1969, 91 Pub. L. No. 173, 83 Stat. 792.

3

and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a).

In general, to establish an entitlement to black lung benefits, a miner must show: "(1) that he has pneumoconiosis, in either its 'clinical' or 'legal' form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability." Mingo Logan Coal Co. v. Owens, 724 F.3d 550, 555 (4th Cir. 2013) (citing 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1)). Pneumoconiosis is a "substantially contributing cause" of a miner's disability if the pneumoconiosis (1) "[h]as a material adverse effect on the miner's respiratory or pulmonary condition" or (2) "[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c)(1).

In 1972, Congress added to the Act a rebuttable presumption of total disability due to pneumoconiosis (the presumption). See Black Lung Benefits Act of 1972, 92 Pub. L. No. 303, 86 Stat. 150, 154; 30 U.S.C. § 921(c)(4) (2012).[4] The presumption

---

[4] When referencing prior versions of the Act and certain regulations, our citations refer to the date of the latest
(Continued)

4

is applicable to a miner's claim if he worked for at least 15 years in underground coal mines, if a chest x-ray does not show the presence of complicated pneumoconiosis,[5] and "if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment." § 921(c)(4). Section 921(c)(4) also specifies the manner in which the Secretary of Labor[6] (the Secretary) can rebut the presumption:

---

publication of the United States Code or Code of Federal Regulations in which the relevant language appeared.

[5] A miner suffering from complicated pneumoconiosis is entitled to an irrebuttable presumption that he is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c)(3).

[6] At the time the presumption first was added to the statute, the reference in Section 921(c)(4) to the "Secretary" likely referred to the Secretary of Health, Education, and Welfare, who was responsible for claims filed until June 30, 1973. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 8, 35 (1976).

Such claims filed on or before June 30, 1973 were processed by the Social Security Administration, and successful claims were paid by the federal government. Mullins Coal Co. v. Dir., Office of Workers' Comp. Programs, 484 U.S. 135, 138-39 (1987). Claims filed on or after July 1, 1973 "are paid by private employers or by a fund to which the employers contribute, and they are administered by the Director of the Office of Workers' Compensation Programs pursuant to regulations promulgated by the Secretary of Labor." Id. at 139.

Since January 31, 2003, the Department of Labor has been responsible for administering the entirety of the black lung benefits program. See Black Lung Consolidation of Administrative Responsibility Act, 107 Pub. L. No. 275, 116 Stat. 1925 (2002). The current version of the Act specifies that the term "Secretary" in the Act refers to the Secretary of Labor. 30 U.S.C. § 902(c). Today, the federal government through the Black Lung Disability Trust Fund pays black lung (Continued)

5

The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

Four years after the presumption was added to the statute, the Supreme Court decided Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 35-37 (1976), holding that the rebuttal provision in Section 921(c)(4) applied by its plain terms only to the Secretary, not to coal mine operators opposing a miner's claim for benefits. Later, in 1980, the Department of Labor promulgated a regulation implementing the statutory presumption and clarifying the rebuttal standard for both the Secretary and the coal mine operators (the original regulation). See Standards for Determining Coal Miners' Total Disability or Death Due To Pneumoconiosis, 45 Fed. Reg. 13,678, 13,692 (Feb. 29, 1980); 20 C.F.R. § 718.305 (2012). The original regulation set forth the rebuttal standard as follows:

Where the cause of death or total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or the evidence establishes that the miner does not or did not have pneumoconiosis, the presumption will be considered rebutted. However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling

benefits to miners when, among other reasons, "there is no operator who is liable for the payment of such benefits." 26 U.S.C. § 9501(d)(1)(B).

6

    obstructive   respiratory   or   pulmonary   disease   of
    unknown origin.

§ 718.305(d) (2012) (emphasis added).

In   1981,   however,   Congress   entirely   eliminated   the
statutory presumption from Section 921(c)(4) for claims filed on
or after January 1, 1982.   See Black Lung Benefits Revenue Act
of   1981,   97   Pub.   L.   No.   119,   95   Stat.   1635.    The   original
regulation was amended in 1983 to reflect this statutory change,
but   remained   in   effect   as   originally   written   for   claims   filed
before January 1, 1982.[7]

The   presumption   was   restored   to   the   statute   in   March   2010,
as part of the Patient Protection and Affordable Care Act.   See
Patient Protection and Affordable Care Act, 111 Pub. L. No. 148,
124   Stat.   119,   §   1556   (2010).    In   reenacting   this   provision,
Congress   used   language   identical   to   that   employed   in   the
original   statute.    See   30   U.S.C.   §   921(c)(4)   (2012).    This
revived   statutory   presumption   remains   in   effect   at   the   time   of
this appeal.

In   2013,   the   Department   of   Labor   promulgated   a   revised
regulation (the revised regulation, or the regulation), which is

---

[7] Standards for Determining Coal Miner's Total Disability or
Death Due to Pneumoconiosis; Claims for Benefits Under Part C of
Title IV of the Federal Mine Safety and Health Act, as Amended,
48 Fed. Reg. 24,272, 24,289 (May 31, 1983); see 20 C.F.R.
§ 718.305(e) (2013).   The original regulation otherwise remained
unchanged until 2013.

at issue in this case. The revised regulation states the following evidentiary standard that is required to rebut the presumption:

> In a claim filed by a miner, the party opposing entitlement may rebut the presumption by--
>
>> (i) Establishing both that the miner does not, or did not, have:
>>
>>> (A) Legal pneumoconiosis . . . ; and
>>>
>>> (B) Clinical pneumoconiosis . . . , arising out of coal mine employment . . . ; or
>>
>> (ii) Establishing that <u>no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis</u> . . . .

20 C.F.R. § 718.305(d)(1) (2014) (emphasis added). Although the language of the revised regulation differs in some respects from the original regulation, both versions require that any party, including a coal mine operator, who seeks to rebut the presumption by disproving disability causation, "rule out" any connection between a miner's pneumoconiosis and his disability. The validity of this "rule-out standard" as applied to coal mine operators is the primary issue presented in this appeal.


II.

Bender, who was 60 years old at the time of the ALJ's decision, was employed in an underground coal mine for 21 years and ended his work in the mines around 1995. Bender also smoked

8

between one and one half and two packs of cigarettes daily for over 40 years, and continues to smoke three or four cigarettes per day. Bender is in poor overall health, and was diagnosed with lung cancer in 2007. As a result of his lung cancer, Bender has undergone radiation and chemotherapy treatments, as well as the removal of a portion of his lung. He also suffers from diabetes, has undergone several bypass surgeries, and receives oxygen at night and after physical exertion.

Bender filed a claim for black lung benefits in 2009.[8] After a hearing conducted in August 2010, the ALJ applied the presumption to Bender's claim in light of Bender's 21-year history of underground coal mine employment and the consensus of all the medical experts that Bender suffers from a totally disabling respiratory condition. Under the presumption, the burden therefore shifted to the operator to disprove Bender's entitlement to benefits.

At the time of the ALJ's decision, the Department of Labor had not yet promulgated the revised regulation imposing the current version of the rule-out standard for rebuttal of the presumption. However, the ALJ applied an analogous rule-out standard that this Court had used in the context of a previous

---

[8] Bender had filed an earlier claim for benefits in 2003, which was denied due to his failure to prove that he suffered from a disability.

9

"interim" presumption, which required the operator to "rule out any causal relationship between the miner's disability and his coal mine employment by a preponderance of the evidence" in order to rebut the presumption. See Stiltner v. Island Creek Coal Co., 86 F.3d 337, 339 (4th Cir. 1996); see also infra at 26-27 (discussing the interim presumption).

At the hearing before the ALJ in 2010, the operator offered the expert opinions of three physicians to rebut the presumption of Bender's total disability due to pneumoconiosis. All three agreed that Bender suffers from simple clinical pneumoconiosis. The operator thus sought to rebut the presumption by demonstrating that Bender's respiratory disability was not caused by his pneumoconiosis.

The first of the operator's experts, Dr. Peter Tuteur, chronicled Bender's extensive medical history, including a "multiplicity of cigarette smoke induced health problems." Dr. Tuteur opined that Bender's lung cancer and other medical conditions, including emphysema and chronic obstructive pulmonary disease, were not "in any way related to, aggravated by, or caused by the inhalation of coal mine dust or the development of coal workers' pneumoconiosis." Dr. Tuteur explained that he would have expected to find "decreased lung expansion" and "inspiratory crackling sounds" if Bender's pneumoconiosis had been advanced enough to "produce

10

abnormalities on physical examination," but that these anticipated symptoms were not present. Dr. Tuteur therefore concluded that Bender's pneumoconiosis was "present but [had] no clinical effect."

Dr. Tuteur also stated that Bender's disability was "not caused in whole or in part by coal workers' pneumoconiosis or any other chronic lung disease arising out of coal mine employment," but instead resulted from Bender's history of smoking, lung cancer, and cancer treatments. In applying the rule-out standard, the ALJ accorded Dr. Tuteur's opinion little weight because Dr. Tuteur failed to "explain how he can determine that none of [Bender's] impairment is due to coal dust exposure."

The operator's second medical expert, Dr. George Zaldivar, similarly testified that "all" of Bender's impairment was attributable to Bender's lung surgery, cancer treatments, and cigarette use. Dr. Zaldivar based his opinion in part on an examination conducted seven years earlier by another doctor. At that earlier time, Bender already had stopped working in the mines and was exhibiting early signs of simple pneumoconiosis, but had no pulmonary abnormalities. Because Bender had not worked in a coal mine since that earlier examination, Dr. Zaldivar attributed Bender's respiratory deterioration to smoking and lung cancer. Dr. Zaldivar concluded that "zero

11

percent" of Bender's respiratory abnormalities were caused by his coal mine employment. As with Dr. Tuteur, the ALJ accorded little weight to Dr. Zaldivar's analysis, because Dr. Zaldivar did not "adequately explain why the worsened results could not also be due to coal workers' pneumoconiosis, which is a progressive disease."

And, finally, the operator offered the report of Dr. P. Raphael Caffrey, who reviewed some surgical pathology slides that included tissue taken from Bender's lung in 2008. Dr. Caffrey noted that lesions caused by pneumoconiosis occupied less than five percent of Bender's observed lung tissue. Dr. Caffrey therefore concluded that Bender's respiratory disability was caused by the removal of lung tissue in treatment of his cancer, not by pneumoconiosis.

Bender presented expert medical evidence from Dr. Donald Rasmussen, who directly contradicted Dr. Caffrey's opinion that the presence of pneumoconiosis was too minimal to cause Bender's impairment. Dr. Rasmussen explained that "[a] finding of limited pneumoconiosis certainly does not exclude Mr. Bender's coal mine dust exposure as a contributing cause of his disabling lung disease. There is no basis for a conclusion that the extent of pneumoconiosis is related to pulmonary function impairment induced by coal mine dust exposure." Dr. Rasmussen further opined that although multiple factors could have

12

contributed to Bender's respiratory impairment, including lung surgery, cancer treatments, and smoking, Bender's exposure to coal dust was a "material contributor."

In considering this conflicting evidence, the ALJ credited Dr. Rasmussen's disability causation opinion over Dr. Caffrey's. In particular, the ALJ cited Dr. Rasmussen's explanation that a finding of limited pneumoconiosis did not exclude coal dust exposure as a cause of Bender's disabling respiratory impairment. The ALJ awarded black lung benefits to Bender, based on the ALJ's conclusion that the operator had failed to rebut the presumption by showing that Bender's pneumoconiosis did not in any way contribute to his disability. The Benefits Review Board affirmed the ALJ's decision, and this petition for review followed.

III.

A.

We first address the operator's legal challenge to the "rule-out" rebuttal standard. As previously discussed, Section 921(c)(4) sets forth a rebuttable presumption of total disability due to pneumoconiosis, as well as a rebuttal standard applicable to the Secretary:

> [I]f a miner was employed for fifteen years
> or more in one or more underground coal
> mines . . . and if other evidence
> demonstrates the existence of a totally

13

disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The revised regulation implementing the statutory presumption, which is at issue in this case, states that "the party opposing entitlement," which would include coal mine operators, may rebut the presumption by

> (i) Establishing both that the miner does not, or did not, have:
>
> > (A) Legal pneumoconiosis . . . ; and
> >
> > (B) Clinical pneumoconiosis . . . , arising out of coal mine employment . . . ; or
>
> (ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis . . . .

20 C.F.R. § 718.305(d)(1).[9]

In evaluating a regulation promulgated by an executive agency, we apply the principles of deference articulated in <u>Chevron v. Natural Resources Defense Council</u>, 467 U.S. 837

---

[9] "Clinical pneumoconiosis" is "a particular set of diseases recognized by the medical community," whereas "legal pneumoconiosis" is "a broader category that includes any chronic lung disease arising out of coal mine employment." <u>Collins v. Pond Creek Mining Co.</u>, 751 F.3d 180, 182 (4th Cir. 2014); <u>see also</u> 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a).

14

(1984).  We first examine "whether Congress has directly spoken to the precise question at issue."  Elm Grove Coal Co. v. Dir., Office of Workers' Comp. Programs, 480 F.3d 278, 292 (4th Cir. 2007) (quoting Chevron, 467 U.S. at 842).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.  However, "if the statute is silent or ambiguous with respect to the specific issue," we continue to the second step of the Chevron analysis, and determine "whether the agency's answer is based on a permissible construction of the statute," according the agency considerable deference.  Id. at 843 (citation omitted).

i.

The operator argues that our analysis is resolved under the first step of Chevron.  Relying on the Supreme Court's decision in Usery, which addressed the plain meaning of Section 921(c)(4), the operator contends that the rebuttal standard in the statute is unambiguous and applies only to the Secretary. In light of this plain statutory language, the operator asserts that the statute does not allow for the same standard to be applied also to operators by way of an agency regulation.  Thus, the operator argues that this aspect of the agency's regulation should be afforded no deference, and that a lesser rebuttal

15

standard should be applicable to operators.  In the operator's view, the proper rebuttal standard for operators would be one that would allow the operator to rebut the statutory presumption by showing that the claimant's pneumoconiosis is not a "substantially contributing cause" of his total disability.  We disagree with the operator's arguments, because we do not think that the holding in Usery is as broad as the operator maintains.

In applying the first step of the Chevron analysis, we employ "the traditional tools of statutory construction to ascertain congressional intent."  Chamber of Commerce of the U.S. v. NLRB, 721 F.3d 152, 160 (4th Cir. 2013) (quoting Chevron, 467 U.S. at 842 n.9) (internal quotation marks omitted).  We begin by considering the language of Section 921(c)(4) to determine whether the statute is silent or ambiguous regarding the manner in which operators can rebut the presumption.  See Chamber of Commerce, 721 F.3d at 160.

We conclude that Section 921(c)(4) is silent regarding the standard that an operator must meet to rebut the presumption. The statutory presumption of total disability due to pneumoconiosis applies both to the Secretary and to operators. However, in addressing the method for rebutting this presumption, the statute refers only to the Secretary.  Although operators necessarily must meet some unarticulated standard to rebut the presumption, the statute specifies none.  Thus,

because the statute does not speak to the standard operators must meet to rebut the presumption, Congress has left a "gap" for the agency to fill by using its delegated regulatory authority.

This conclusion is not affected by the Supreme Court's decision in Usery, in which the Court evaluated the language of the original statutory presumption before it was removed from the statute and later was revived by the Patient Protection and Affordable Care Act. In Usery, as noted above, the Court held that it was "clear as a matter of statutory construction that the . . . limitation on rebuttal evidence is inapplicable to operators." 428 U.S. at 35.

As we have explained, however, because Section 921(c)(4) does not address the standard for rebuttal by operators, that standard may be set by regulation. The Court in Usery did not address any regulation implementing the statute and, crucially, the Court did not consider the evidentiary standard under which parties other than the Secretary could rebut the statutory presumption. Instead, the Court merely was required to address the question whether the statutory rebuttal standard applied equally to operators, when the plain language of that portion of the statute referred only to the Secretary. See id. at 37. In its analysis, moreover, the Court expressly left open the

possibility that the Secretary could promulgate regulations under the statute.[10]  Id. at 37 n.40.

We also observe that the premise of the operator's argument, namely, that the rule-out standard is the substantive equivalent of the statutory rebuttal standard at issue in Usery, is mistaken.  The rebuttal provision in the statute does not address the evidentiary standard required to show that a miner's impairment did not "arise out of, or in connection with, employment in a coal mine."  § 921(c)(4).  The statute merely identifies the elements of a claim that can be rebutted.  In contrast, the rule-out standard prescribes the evidentiary standard that a party must satisfy to rebut the presumption.

This distinction explains the Court's analytical focus in Usery.  At the time Usery was decided, coal miners could be compensated under the Act only if their disability was caused by what became known as "clinical pneumoconiosis," which is "a particular set of diseases recognized by the medical community."

---

[10]  The Court observed that the Secretary of Health, Education, and Welfare had promulgated regulations imposing on both operators and the Secretary a rebuttal standard similar to that set forth in the statute.  See Usery, 428 U.S. at 37 (citing 20 C.F.R. §§ 410.414, 410.454 (1975)).  The operators in Usery did not challenge these regulations and, accordingly, the Court declined to address them.  Id.  We note that the regulations in place at the time of Usery mirrored the rebuttal language in Section 921(c)(4), and did not articulate a rule-out standard for rebuttal.  See 20 C.F.R. §§ 410.414, 410.454 (1975).

18

Collins v. Pine Creek Mining Co., 751 F.3d 180, 182 (4th Cir. 2014) (defining clinical pneumoconiosis); Andersen v. Dir., Office of Workers' Comp. Programs, 455 F.3d 1102, 1105-06 (10th Cir. 2006) (explaining the original definition of "pneumoconiosis" under the Act). Therefore, in Usery, the operators argued that the rebuttal provision in Section 921(c)(4) was unconstitutional because it permitted a miner who qualified for the statutory presumption, but whose disability was not caused by a compensable disease under the Act, to receive an award of benefits. See Usery, 428 U.S. at 34-35.

The Supreme Court avoided the operators' constitutional challenge to Section 921(c)(4) by holding that only the Secretary was bound by the statutory rebuttal limitations. Id. at 35. Operators thus were permitted to rebut the statutory presumption by showing that a miner was disabled by a disease related to coal dust exposure that was not pneumoconiosis. Id.

Following the decision in Usery, Congress amended the Act in 1978 to define compensable pneumoconiosis to include what is now known as "legal pneumoconiosis," as well as clinical pneumoconiosis.[11] Black Lung Benefits Reform Act of 1977, 95

---

[11] The operator maintains that the 1978 amendments to the Act "merely codified the existing standard of practice," under which miners already could receive benefits for disabling legal pneumoconiosis at the time of Usery. Even if this assertion is accurate, however, the Supreme Court in Usery nevertheless (Continued)

19

Pub. L. No. 239, 92 Stat. 95; see 30 U.S.C. § 902(b) (2012). Thereafter, the agency promulgated regulations further defining legal pneumoconiosis as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2) (2014). Under this new regime, the concerns animating the Court's decision in Usery, namely, concerns about Section 921(c)(4) preventing an operator from rebutting the presumption by showing that a miner was not disabled due to clinical pneumoconiosis but due to another respiratory disease caused by his coal mine employment, are no longer present, because all totally disabling diseases caused by coal dust exposure now are compensable under the Act. Accordingly, the Court in Usery did not consider whether the rule-out standard, as opposed to a more lenient rebuttal standard, would be a permissible evidentiary standard for rebuttal under the Act.

We therefore conclude that Usery did not answer either the question whether Congress left a gap in Section 921(c)(4) that the agency was permitted to fill by regulation, or the question

focused on the operators' argument that the rebuttal limitations in Section 921(c)(4) improperly allowed an award of benefits even if a miner's disability was caused by a non-compensable disease. Usery, 428 U.S. at 34–35.

20

whether application of the rule-out standard to coal mine operators in a regulation would be a reasonable exercise of agency authority in filling such a gap in the statute.[12] Thus, given the different issue before the Court in Usery, the Court's holding does not affect our analysis under the first step of the Chevron standard.

ii.

Having identified the gap in Section 921(c)(4) that the agency was permitted to fill by regulation, we proceed to the second step of the Chevron analysis, under which we ask whether the agency's regulation "is a reasonable choice within [the] gap left open by Congress." Chevron, 467 U.S. at 866. We defer to an agency if its "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." Id. at 845 (citation omitted). We will not disturb the agency's choice "unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." Id.

---

[12] This Court recently was presented with the question whether the rebuttal standard in Section 921(c)(4) applies to operators, after the presumption was revived by the Patient Protection and Affordable Care Act. See Mingo Logan Coal Co., 724 F.3d 550. Although the majority opinion did not address the question, our colleague Judge Niemeyer considered the language of the statutory presumption, but did not consider the language of any regulation, in a concurring opinion, concluding that, under Usery, the rebuttal standard in the statute does not bind operators. Id. at 560-61 (Niemeyer, J., concurring).

21

Additionally, to uphold application of the regulation under Chevron, we are not required to conclude that the agency's construction was the only one that the agency permissibly could have adopted under the statute, or was the construction a court would have placed on the statute if presented with the question in the first instance. Id. at 843 n.11. Instead, we evaluate only whether the regulation is a reasonable exercise of agency authority. Id. at 844.

In making this determination, we first observe that the rule-out standard was made a part of the Act's regulatory scheme in 1980, in the original version of 20 C.F.R. § 718.305. See Standards for Determining Coal Miners' Total Disability or Death Due To Pneumoconiosis, 45 Fed. Reg. 13,678, 13,692 (Feb. 29, 1980); 20 C.F.R. § 718.305 (2012) ("Where the cause of death or total disability did not arise in whole or in part out of dust exposure . . . the presumption will be considered rebutted.") (emphasis added). Although Congress necessarily was aware of this regulation when reenacting the statutory presumption in 2010, Congress did not insert a different rebuttal standard for coal mine operators into the statute, or otherwise amend the statutory language to signal its disagreement with the agency's earlier construction of the statute. We therefore may assume, in the absence of a contrary showing, that Congress intended to retain the agency's interpretation of the prior version of the

22

statute.  See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

The rule-out standard unquestionably advances Congress' purpose in enacting the statutory presumption.  Congress instituted the statutory presumption to make it easier for those miners most likely to be disabled due to coal dust exposure to obtain benefits, in response to the high rate of claim denials that miners experienced without the statutory presumption.  See Pauley, 501 U.S. at 685-86 (discussing the original statutory presumption as passed in 1972); Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,102, 59,106-07 (2013) ("Congress adopted the presumption to relax the often insurmountable burden of proving eligibility these miners faced.") (citation, internal quotation marks, and alteration omitted).  The strict nature of the regulatory rule-out standard furthers this goal by placing a significant burden on operators seeking to rebut the statutory presumption.[13]

---

[13] The operator also contends that the rule-out standard violates the principle articulated in Director, Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267 (1994), which held that under the Administrative Procedure Act, the proponent of a rule or order must meet his burden by a
(Continued)

23

We further observe that, in practice, operators will be required to satisfy the rule-out standard only in a clearly defined class of black lung claims. The rule-out standard applies only when (1) a miner has worked for 15 years or more in an underground coal mine, (2) he suffers from a totally disabling respiratory or pulmonary impairment, and (3) the operator cannot satisfy the first method of rebuttal under Section 718.305(d), namely, disproving the presence of pneumoconiosis. This class of cases is indisputably serious and encompasses claimants whose disabilities likely are attributable at least in part to pneumoconiosis.

And, critically, the intent of Congress in enacting the presumption would be thwarted if the operator's proposed "alternative" rebuttal standard were applied. As noted above, in place of the rule-out standard, the operator asserts that it should be allowed to rebut the statutory presumption by showing

---

preponderance of the evidence. Id. at 277-78. However, "the preponderance standard goes to how convincing the evidence in favor of a fact must be . . . before that fact may be found, but does not determine what facts must be proven as a substantive part of a claim or defense." Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 139 n.9 (1997). Here, the rule-out standard articulates "only what facts must be established to rebut the presumption," and is therefore consistent with Collieries. Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,102, 59,107 (Sept. 25, 2013).

24

that the claimant's pneumoconiosis is not a "substantially contributing cause" of his total disability.

This "alternative" rebuttal standard, however, effectively would nullify the statutory presumption for coal miners such as Bender whom Congress intended to assist. Instead of shifting the burden of proof to the operator to rule out pneumoconiosis as a cause of the miner's disability, the operator's proposed rebuttal standard would track, in the negative, the evidentiary burden placed on a miner who has not qualified for the statutory presumption, namely, to show that pneumoconiosis is a "substantially contributing cause" of his total disability. See 20 C.F.R. § 718.204(c)(1); Mingo Logan Coal Co., 724 F.3d at 555. Thus, to counter an operator's evidence that pneumoconiosis was not "a substantially contributing cause" of the miner's disability, a miner entitled to the statutory presumption nevertheless would be placed back at "square one," forced to prove the "substantial" impact of pneumoconiosis on his disability, which is the very situation that Congress intended to eliminate in enacting the presumption. See Pauley, 501 U.S. at 685-86.

Next, we observe that one of our sister circuits recently considered the present issue whether the regulatory rule-out standard lawfully applies to coal mine operators, and reached the same conclusion that we do. See Big Branch Res., Inc. v.

<u>Ogle</u>, 737 F.3d 1063 (6th Cir. 2013). In its decision, the Sixth Circuit rejected the operator's argument under <u>Usery</u> and affirmed application of the regulatory rule-out standard to coal mine operators. <u>Id.</u> at 1069-71. The court explained that to rebut the statutory presumption of disability, an employer must show under the rule-out standard that "the [miner's] coal mine employment <u>played no part</u> in causing the [miner's] total disability. . . ." <u>Id.</u> at 1071 (emphasis in original).

Our analysis of an earlier regulation in <u>Bethlehem Mines Corp. v. Massey</u>, 736 F.2d 120 (4th Cir. 1984), further reinforces our conclusion that the present regulation is a reasonable exercise of agency authority. We reviewed in <u>Massey</u> an interim regulation, which established a rebuttable presumption of total disability due to pneumoconiosis when a miner had worked for at least 10 years in coal mine employment and suffered from a chronic respiratory or pulmonary disease. <u>See</u> <u>id.</u>; <u>see also</u> <u>Stiltner</u>, 86 F.3d at 339 (describing the interim presumption); <u>Mullins Coal Co. v. Dir., Office of Workers' Comp. Programs</u>, 484 U.S. 135, 138-39 (1987) (explaining the applicability of interim versus permanent regulations to certain types of claims). The presumption at issue in <u>Massey</u> could be rebutted under the agency regulation by showing that the miner's disability did not "arise <u>in whole or in part</u> out of

26

coal mine employment." Massey, 736 F.2d at 123 (quoting 20 C.F.R. § 727.203(b)(3)) (emphasis in original).

Similar to the operator's position here, the coal mine operator in Massey argued that it should have been allowed to rebut the interim presumption of disability under Section 727.203(b)(3) by showing that "the claimant's pneumoconiosis is but one of several factors contributing to his total disability." Id. at 122-23. Rejecting this argument, we explained in Massey that the rule-out standard reasonably reflected the reality that the convergence of many medical and environmental factors often will cause a miner's disability. See id. at 124. We observed that the rule-out standard was consistent with the "letter and spirit" of the Act, by eliminating the burden of proving causation for miners who likely suffer from disabling pneumoconiosis. Id. Thus, we affirmed the rule-out standard in the interim regulation, concluding that the standard was "within [the Secretary's] rulemaking authority and served the broad remedial purposes of the statute." Id.

As reflected by our decision in Massey, deference to the agency's interpretation is particularly appropriate here because Congress, through the Act, has "produced a complex and highly technical regulatory program" in which "[t]he identification and classification of medical eligibility criteria necessarily

27

require significant expertise and entail the exercise of judgment grounded in policy concerns" entrusted to the agency. Pauley, 501 U.S. at 697. Thus, in the absence of explicit direction from Congress, the procedures under which a claimant may establish entitlement to benefits are a quintessential policy judgment best left to the agency. See id. at 696 ("When Congress, through . . . the introduction of an interpretive gap in the statutory structure, has delegated policy-making authority to an administrative agency, the extent of judicial review of the agency's policy determinations is limited.").

Although the rule-out standard undeniably places a substantial burden on coal mine operators, we cannot say that the agency acted unreasonably in issuing the regulation containing the present rule-out standard.[14] Accordingly, we hold

---

[14] The operator also argues that it lacked notice of the rule-out standard during the administrative proceedings in this case and, therefore, that its due process rights will be violated if we affirm the rule-out standard without permitting the operator to present new rebuttal evidence. The operator, however, agrees that we should address in this appeal the validity of the rule-out standard established in Section 718.305(d).

We conclude that the operator's argument that it lacked notice of the rule-out standard is without merit. The original version of Section 718.305(d), which the agency promulgated in 1980, similarly required operators to rule out disability causation in order to rebut the statutory presumption in Section 921(c)(4). The original regulation, applicable to claims filed through 1981, remained intact until the 2013 amendments at issue in this case.
(Continued)

28

that the rule-out standard set forth in Section 718.305(d) is a reasonable exercise of the agency's authority under Chevron, and lawfully applies to coal mine operators as well as to the Secretary. Therefore, as specifically provided in the regulation, any "party opposing entitlement" to black lung benefits, including coal mine operators, may rebut the statutory presumption of disability under subsection (d)(1)(ii) of the regulation only by proving that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d).

## B.

The operator argues, nevertheless, that the ALJ's decision awarding benefits is not supported by substantial evidence, because the ALJ improperly declined to credit the operator's medical experts. The operator contends that, by explaining that Bender's disability was caused by his history of smoking, lung surgery, lung cancer, and cancer treatments, the operator's medical experts ruled out pneumoconiosis as a cause of Bender's

---

We also observe that we applied the rule-out standard to operators in a case under the original statutory presumption. See Rose v. Clinchfield Coal Co., 614 F.2d 936, 939 (4th Cir. 1980). As discussed above, we similarly have applied the rule-out standard over the years to cases involving the interim presumption. See Stiltner, 86 F.3d at 339; Massey, 736 F.2d at 123. For these reasons, we reject the operator's due process argument.

29

disability. Because the ALJ applied the rule-out standard in his analysis of the evidence from the operator's experts, we first explain the type of proof that the rule-out standard requires from a party opposing a miner's claim. We later will address the ALJ's evaluation of the medical evidence.

i.

To rebut the presumption of disability due to pneumoconiosis, an operator must establish that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d). Therefore, the rule-out standard is not satisfied by showing that pneumoconiosis was one of several causes of a miner's disability, or that pneumoconiosis was a minor or even an incidental cause of the miner's respiratory or pulmonary impairment. See Carozza v. U.S. Steel Corp., 727 F.2d 74, 78 (3d Cir. 1984) (comparing the interim presumption to Section 921(c)(4), and explaining that "Congress did not intend to exclude benefits for total disability resulting from multiple causes, one of which is pneumoconiosis"); Massey, 736 F.2d at 123 ("Pneumoconiosis . . . must be a causative factor in the miner's total disability, but it need not be the exclusive causative factor rendering the claimant totally disabled . . . .").

Instead, an operator opposing an award of black lung benefits affirmatively must establish that the miner's

30

disability is attributable exclusively to a cause or causes other than pneumoconiosis.  See Massey, 736 F.2d at 123-24 (to rebut the interim presumption, an operator must "rule out the causal relationship between the miner's total disability and his coal mine employment").  Thus, to make the required showing when a miner has qualified for the statutory presumption, a medical expert testifying in opposition to an award of benefits must consider pneumoconiosis together with all other possible causes, and adequately explain why pneumoconiosis was not at least a partial cause of the miner's respiratory or pulmonary disability.

ii.

In reviewing a decision of the Benefits Review Board, we evaluate "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and ALJ are rational and consistent with applicable law." Harman Mining Co. v. Dir., Office of Workers' Comp. Programs, 678 F.3d 305, 310 (4th Cir. 2012) (citation, internal quotation marks, and alteration omitted).  We defer to the ALJ's determination regarding the proper weight to be accorded competing medical evidence, and we "must be careful not to substitute our judgment for that of the ALJ."  Id.

In the present case, both Drs. Tuteur and Zaldivar opined that Bender's disability was caused by his history of smoking

31

and cancer treatments. The ALJ discredited these disability causation opinions because the doctors did not adequately explain, as required under the rule-out standard, why Bender's disability was not also partially attributable to pneumoconiosis. The ALJ additionally found that, by emphasizing Bender's deteriorating condition after leaving the coal mines, Dr. Zaldivar did not rule out pneumoconiosis as a cause of Bender's disability given the progressive nature of the disease.

It was within the ALJ's prerogative as fact-finder to weigh the credibility of the experts and to determine the persuasiveness of their testimony. See Island Creek Coal Co. v. Compton, 211 F.3d 203, 211 (4th Cir. 2000). "[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert," but instead "must evaluate the evidence, weigh it, and draw his own conclusions." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949 (4th Cir. 1997). Here, the ALJ appropriately found that by identifying causes other than pneumoconiosis, Drs. Tuteur and Zaldivar failed to establish that pneumoconiosis played "no part" in causing Bender's disability. And, although Dr. Tuteur identified reasons for concluding that Bender's pneumoconiosis had no clinical effect, the ALJ was not required to find Dr. Tuteur's explanation persuasive. The ALJ also reasonably determined that Dr. Zaldivar's causation opinion was inadequately supported.

32

With respect to Dr. Caffrey's opinion that Bender's pneumoconiosis was insufficiently severe to be disabling, the ALJ credited the contrary opinion of Bender's medical expert, Dr. Rasmussen, who explained that the extent of pneumoconiosis as reflected on an x-ray has no bearing on whether the disease was a cause of a miner's disability. It is the prerogative of the ALJ, rather than of a reviewing court, to resolve such a battle of the experts. Westmoreland Coal Co. v. Cochran, 718 F.3d 319, 324 (4th Cir. 2013). Therefore, we will not disrupt the ALJ's decision to credit the opinion of one expert over another.

For these reasons, we conclude that the ALJ acted within his fact-finding role in weighing the credibility and the persuasiveness of the medical expert opinions. Accordingly, in view of our deferential standard of review and the high burden imposed by the rule-out standard, we hold that the ALJ's factual determinations are supported by substantial evidence.

IV.

For these reasons, the operator's petition for review is denied.

PETITION FOR REVIEW DENIED

33