**HELVETIA COAL COMPANY,**
Petitioner

v.

**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, Unit-
ed States Department of Labor and
Kenneth R. Arduini, Respondents**

No. 16-1102

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit L.A.R.
34.1(a) September 6, 2016

(Opinion Filed: February 3, 2017)

Cheryl L. Intravaia, Esq., Feirich Mag-
er Green Ryan, Carbondale, IL, for Peti-
tioner

Michael Chance, Esq., U.S. Department of Labor, Washington, DC, Sarah M. Hurley, Esq., Rae Ellen James, Esq., Gary K. Stearman, Esq., United States Department of Labor, Office of the Solicitor, Washington, DC, for Non-Participating

Cheryl C. Cowen, Esq., Waynesburg, PA, for Respondent

Before: JORDAN, VANASKIE, and NYGAARD, Circuit Judges.

## OPINION *

VANASKIE, Circuit Judge.

Helvetia Coal Company petitions for review of a decision of the United States Department of Labor Benefits Review Board ("BRB"), affirming an award of disability benefits to miner Kenneth Arduini under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901–944. For the reasons discussed below, we will deny Helvetia's Petition for Review.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Kenneth Arduini worked in coal mines for more than 20 years. All of Arduini's coal mine employment was underground, where he was exposed to "extreme" and "very extreme" coal dust without respiratory protection. (App. 707.) He left the mining industry in 1998. His last employment in the mines was with Helvetia. Arduini also was a cigarette smoker.

On August 13, 2010, Arduini filed a timely claim for benefits under the BLBA. The Department of Labor awarded benefits in a Proposed Decision and Order on December 22, 2011. Helvetia then requested a formal hearing before the Office of Administrative Law Judges.

The threshold issue presented to the Administrative Law Judge (ALJ) was whether Arduini had met his burden of proving the existence of pneumoconiosis.[1] Although finding that neither X-rays, pulmonary function tests, blood gas studies nor biopsy revealed the existence of pneumoconiosis, the ALJ concluded that Arduini did indeed have a respiratory or pulmonary impairment that rendered him totally disabled. This conclusion was based upon the unanimous opinion of the five physicians whose reports were presented to the ALJ, three on behalf of Arduini and two on behalf of Helvetia. In light of Arduini's disabling respiratory impairment and more than 20 years of underground coal mine employment, the ALJ held that Arduini was entitled to a statutory rebuttable presumption of total disability due to pneumoconiosis, as prescribed by 30 U.S.C. § 921(c)(4).[2]

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1. Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a). There are two types: (1) clinical pneumoconiosis, which "consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment," 20 C.F.R. § 718.201(a)(1); and (2) legal pneumoconiosis, which includes "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," 20 C.F.R. § 718.201(a)(2).

2. Section 921(c)(4) of Title provides that when "a miner was employed for fifteen years or more" in a coal mine and "other evidence demonstrates the existence of a totally disabl-

The ALJ then determined that the presumption had been rebutted, finding that the conclusions of Helvetia's physicians—Drs. Gregory J. Fino and George Zaldivar—were more persuasive than the doctors who presented reports on behalf of Arduini. In rejecting the opinions of Arduini's physicians, the ALJ relied upon pulmonary function tests that the ALJ interpreted as showing improvement in respiratory capacity, a result the ALJ considered to be inconsistent with Coal Worker's Pneumoconiosis (CWP), an irreversible and progressive disease that does not become less severe over time. *See Labelle Processing Co. v. Swarrow,* 72 F.3d 308, 315 (3d Cir. 1995) ("[C]ourts have long acknowledged that pneumoconiosis is a progressive and irreversible disease"). The ALJ noted that "[t]he last pulmonary function study data in the case, dated May 23, 2012, conducted by the physician of [Arduini's] choosing (Dr. Celko), was not only an improvement over the previous testing results, but it improved so much that it no longer qualified under the regulations [as establishing a totally disabling respiratory or pulmonary impairment]." (App. at 21.) The ALJ also found that the perceived improvement in pulmonary function tests supported the conclusions of Helvetia's doctors that "smoking alone is the cause of [Arduini's] pulmonary impairment....."[3] (Id.) The ALJ discounted the opinions of Arduini's doctors—who found that the totally disabling respiratory impairment was the result of a combination of both smoking and coal dust exposure—because "none of the three [physicians] sufficiently explain[ed] the improvement in [Arduini's] pulmonary function studies." (Id.) Arduini appealed to the BRB.

On appeal, Helvetia conceded that the ALJ had in fact utilized incorrect pulmonary function study values, but argued that the error was harmless because the ALJ had nonetheless invoked the rebuttable presumption that Arduini was disabled due to CWP. According to Helvetia, the error in reporting the values did not affect the ALJ's determination that Helvetia had established that cigarette smoking was the sole cause of Arduini's respiratory impairment. The BLB disagreed, concluding that the errors in reporting the results of the studies required vacating the ALJ's finding that Arduini's "pulmonary function improved over time." (App. at 31.) The BRB remanded the case for the ALJ to determine whether the correct pulmonary function study values supported a conclusion of total disability, and to reconsider the medical opinion evidence to determine whether Helvetia actually rebutted the statutory presumption that Arduini was disabled due, at least in part, to pneumoconiosis. In

---

ing respiratory or pulmonary impairment," there is a "rebuttable presumption that such miner is totally disabled due to pneumoconiosis." The employer may rebut this presumption of total disability by establishing that (1) the miner "does not ... have" clinical or legal pneumoconiosis, or (2) "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis," 20 C.F.R. § 718.305(d)(1) (2013) (emphasis added). To meet the second prong for rebutting the presumption, a party must "rule[ ] out any connection between the claimant's disability and coal mine employment." *Antelope Coal Co. v. Goodin,* 743 F.3d 1331, 1336 (10th Cir. 2014) (citing 78 Fed. Reg. 59,101, 59,107)

(Sept. 25, 2013); *see also W. Va. CWP Fund v. Bender,* 782 F.3d 129, 140–41 (4th Cir. 2015).

**3.** Drs. Fino and Zaldivar found that Arduini's respiratory impairment was attributable to smoking, and not coal dust, based upon improvement shown by Arduini during successive pulmonary function studies and the absence of x-ray evidence of clinical pneumoconiosis. The doctors opined that the improvement in pulmonary function values indicated that Arduini was suffering from smoking-induced emphysema, and not coal dust inhalation.

remanding the matter, the BRB also wrote:

[T]here is merit in claimant's contention that the administrative law judge erred in crediting the opinions of Drs. Fino and Zaldivar, without considering whether they relied upon premises that conflict with the medical science endorsed by the Department of Labor (DOL) in the preamble to the 2001 revisions to the regulations. Specifically, the administrative law judge did not address the significance of the statements in which Drs. Fino and Zaldivar indicated that coal dust exposure cannot be identified as the cause of an obstructive impairment in the absence of x-ray evidence of clinical pneumoconiosis—a position that is contrary to the DOL's position. The administrative law judge also did not determine whether the conclusions expressed by Drs. Fino and Zaldivar are consistent with the DOL's recognition that miners who smoke have an additive risk for developing significant obstruction, and that dust-induced emphysema and smoke-induced emphysema occur through similar mechanisms.

(App. at 31-32; citations omitted.)

On remand, the ALJ re-evaluated the pulmonary function studies and found that the data established disabling respiratory or pulmonary impairment under 20 C.F.R. § 718.204(b)(2)(i).[4] The ALJ also acknowledged that the opinions of Arduini's doctors "should not have been discredited for failing to explain progressive improvement in [Arduini's] pulmonary function tests as that perceived improvement was the result of a mischaracterization of the evidence." (App. at 42.) After reviewing the expert opinions with the correct pulmonary function data, the ALJ found that Helvetia failed to rebut the presumption as to the existence of pneumoconiosis. In this regard, the ALJ found that Helvetia's doctors impermissibly "relie[d] on the absence of radiographic changes consistent with pneumoconiosis," (App. at 43), a fact that the Department of Labor had found was inconsequential in its preamble to regulations implementing the BLBA. *See* 65 Fed. Reg. 79,938-39 (Dec. 20, 2000). The ALJ awarded benefits, and this time, it was Helvetia who appealed to the BRB.

The BRB affirmed the ALJ's subsequent award of benefits, finding that the ALJ's decision was supported by substantial evidence in the record. The BRB rejected Helvetia's claim that the BRB's remand was outside the scope of its powers, irrational, and not in accordance with law. The BRB also rejected the notion that its remand instructions, outlining the proper law to consider and leaving the ALJ with discretion, was an improper attempt to bias the ALJ. Helvetia then petitioned for review by this Court.

## II.

We have jurisdiction under 30 U.S.C. § 932(a), which incorporates the review procedures of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), in pneumoconiosis cases involving coal miners. *See Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 (3d Cir. 1995). "We review the [BRB]'s decision to determine whether it committed an error of law and whether it adhered to its scope of review. In performing the latter function, we must independently review the record and decide whether the ALJ's findings are supported by substantial evidence." *Wen-*

---

**4.** This regulation provides that, "[i]n the absence of contrary probative evidence," a miner's total disability is established if "[p]ulmonary function tests show[ ] values equal to or less than" those that have been prescribed "for an individual of the miner's age, sex, and height. . . ." 20 C.F.R. § 718.204(b)(2)(1).

*sel v. Dir., Office of Workers' Comp. Programs*, 888 F.2d 14, 16 (3d Cir. 1989) (citations and internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Dir., Office of Workers' Comp. Programs*, 562 F.3d 264, 268 (3d Cir. 2009) (citations and internal quotation marks omitted).

## III.

Helvetia argues that, in remanding the ALJ's initial decision denying benefits, the BRB "acted outside the scope of its review." (Petitioner's Br. at 7.) Helvetia also contends that the ALJ's subsequent decision awarding benefits cannot withstand judicial review. We will address each argument in turn.

### A. The Initial ALJ Decision Denying Benefits

■ Helvetia first asserts that the Board should have adopted the ALJ's initial decision denying Arduini's claim for benefits because the initial decision was supported by substantial evidence, rational, and not contrary law. Additionally, Helvetia contends that when the BRB remanded the case to the ALJ, the BRB erred because its "directives ... were actions outside the scope of the Board's statutory powers...." (*Id.* at 14.) We are not persuaded by Helvetia's arguments.

As an initial matter, we note that Helvetia acknowledges that "the ALJ relied on erroneous values for the November 23, 2010 and May 23, 2012" pulmonary function testing, and that "that the correct values ... revealed qualifying values for total disability." (*Id.* at 10.) Notwithstanding the ALJ's undisputed errors, Helvetia contends that the ALJ's "error was harmless" as it pertained to his ultimate conclusion that the total disability was caused solely by cigarette smoking. (*Id.*)

Contrary to Helvetia's assertions, the ALJ's reliance on erroneous data pervaded his assessment of the issues, including the question of whether Helvetia had rebutted the presumption that Arduini was disabled due to pneumoconiosis. Under these circumstances, it cannot be said that the ALJ's direct reliance on incorrect pulmonary testing data to support his denial of benefits was harmless error.[5] *Cf. Sahara Coal Co. v. Office of Workers Comp. Programs*, 946 F.2d 554, 558 (7th Cir. 1991) (explaining that harmless error is applicable to review an ALJ decision in black lung cases, but only "[i]f the outcome of a remand is foreordained"). The BRB has the statutory authority to remand "a case to the administrative law judge for further appropriate action," 33 U.S.C § 921(b)(4), and the ALJ's reliance upon invalid data certainly provided grounds for a remand here.

Nor did the BRB act improperly in providing guidance to the ALJ to evaluate the evidence using correct pulmonary function

---

5. Indeed, the ALJ specifically found that "the ... testing of May 23, 2012 ... [was] the most probative" testing when making his finding that "a total respiratory or pulmonary disability has not been demonstrated by a preponderance of the evidence ... which in turn would invoke the presumption at 20 C.F.R. § 718.305." (App. 14.) Furthermore, the ALJ specifically used the erroneous and incorrect data from the May 23, 2012 pulmonary test to discount the findings of the ex-

perts who found that pneumoconiosis was the result of a combination of both smoking and coal dust exposure. *See* (App. 20) ("The last pulmonary function study data in the case, dated May 23, 2012, conducted by the physician of Claimant's choosing ... was not only an improvement over the previous testing results, but improved so much that it no longer qualified under the regulations.... These three physicians offer no sufficient explanation for Claimant's improvement over time").

values. On the contrary, the BRB acted well within its authority in instructing the ALJ to "identify the evidence on which he relies and set forth the rationale underlying his decision...." (App. 33.) In this regard, the BRB did not mandate that the ALJ make a particular finding or that the ALJ follow the Office of Workers' Compensation Program Manual in assessing the pulmonary function values. Instead, the BRB merely referenced the Manual in a parenthetical in explaining that the ALJ must identify the data he was using, "and set forth the reason for his choice." (App. 32) By merely instructing the ALJ to identify the data he used and to set forth the reasoning for his decision, the BRB acted well within its authority.

### B. The Subsequent ALJ Decision Awarding Benefits

■ Helvetia contends that the "ALJ's findings ... related to the opinions of Dr. Rasmussen, Dr. Fino and Dr. Zaldivar were not supported by substantial evidence, were not rational and were contrary to law." (Petitioner's Br. 22.) Helvetia claims that the ALJ's subsequent decision awarding benefits was contrary to law because it contends that "the ALJ's finding ... cannot be reconciled with the ALJ's findings in the previous decision...." (*Id.* at 24.) We note, however, that the ALJ's final decision need not be reconcilable with the ALJ's first decision because, as discussed above, the ALJ's initial decision was *not* supported by substantial evidence as it relied upon incorrect data to discount the findings of the experts who found that pneumoconiosis was the result of a combination of both smoking and coal dust exposure.

After using the proper data following the remand, the ALJ noted that "it is clear that Drs. Celko, Rasmussen, and Houser should not have been discredited for failing to explain progressive improvement in the miner's pulmonary function tests as that perceived improvement was the result of a mischaracterization of the evidence...." (App. 42.) The ALJ then noted that, after examining the correct pulmonary data, Dr. Rasumussen's opinion was "both well-reasoned and well-documented and entitled to great weight" because the opinion "acknowledges that emphysema can be caused by coal mine dust even in the absence of a negative chest X-ray and that coal mine dust induced and smoke induced emphysema are caused by identical mechanisms." (App. 43.) After using the proper data, the ALJ determined that Drs. Fino and Zaldivar's opinions were not entitled to great weight because their opinions concluded that Arduini's emphysema was caused by smoking alone—a view that the ALJ noted "is contrary to that contained in the preamble [of the regulations implementing the BLBA] that coal dust-induced emphysema can occur regardless of the presence of X-ray evidence of pneumoconiosis." (App. 43) (citation and footnote omitted).

The ALJ's decision to discredit the opinions of Drs. Fino and Zaldivar by referring to the preamble of the regulations "unquestionably supports the reasonableness of his decision to assign less weight to [these] opinion[s]." *Helen Min. Co. v. Dir. OWCP*, 650 F.3d 248, 257 (3d Cir. 2011). Furthermore, the position of Drs. Fino and Zaldivar flew in the face of the regulations, which provide that the "determination of the existence of pneumoconiosis may also be made" by a doctor "exercising sound medical judgment, notwithstanding a negative x-ray." 20 C.F.R. § 718.202(a0(4) The ALJ also had a substantial basis for according little weight to the opinions of Helvetia's physicians because neither doctor provided a persuasive explanation for their conclusions that Arduini's undisputed

disabling respiratory impairment was "due solely to smoking." (App. 43.)

We conclude that the ALJ relied upon correct pulmonary function study values; articulated rational bases for crediting Dr. Rasmussen's opinion that Arduini's respiratory impairment was attributable to a combination of coal dust exposure and cigarette smoking; and expressed ample reasons for discrediting the opinions of Helvetia's doctors that Arduini's long-term underground employment in coal mines was not a contributing factor to his disability. The ALJ's award of benefits was thus supported by the type of evidence and rationale that withstands judicial review.

### IV.

For the reasons discussed above, we deny the Petition for Review.